UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PROGRESSIVE GAMING INTERNATIONAL, INC., Plaintiff | ) | CA 08 013 S |
| v. | ) | C.A. No. |
| GREG VENTURI, and JOHN FERL, Defendants. | ) | |

# COMPLAINT

## I. Parties

1. Plaintiff Progressive Gaming International, Inc. is a Nevada corporation with its principle place of business in Las Vegas, Nevada.

2. Plaintiff Progressive Gaming International, Inc. is the successor in interest to Mikohn Gaming Corporation (Progressive Gaming International, Inc. and Mikohn Gaming Corporation shall collectively be referred to as "Mikohn").

3. Defendant Greg Venturi on information and belief is a California citizen and attorney residing in Santa Monica, California.

4. Defendant John Ferl is on information and belief a citizen of California residing in Manhattan Beach, California.

## II. Subject Matter Jurisdiction

5. The plaintiff is a citizen of a different state than all of the defendants.

6. The amount in controversy exceeds Seventy-Five Thousand dollars ($75,000.00).

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

## III. Venue

8. All of the actions that are the subject of this complaint either took place in the State of Rhode Island, or were directed toward the State of Rhode Island, or were designed to induce action in the State of Rhode Island.

9. Rhode Island law governs the rights and obligations of the parties.

10. Witnesses and documents relevant to this action are available in the State of Rhode Island.

11. Litigation related to this action has taken place in the United States District Court for the District of Rhode Island.

12. This judicial district is the proper venue for this action.

## IV. Personal Jurisdiction

13. Defendants have purposefully availed themselves of the internal laws of the State of Rhode Island and have subjected themselves to the personal jurisdiction of this Court.

## V. Background Facts

14. In and around 1998 Mikohn was in the business of licensing brand names for use on slot machines and casino table games.

15. In 1998 Mikohn executed two Worldwide Licensing Agreements (hereafter "Licensing Agreements") with Hasbro, Inc./Hasbro International, Inc. (hereafter "Hasbro").

16. Pursuant to the Agreements Mikohn was permitted to use Hasbro's Yahtzee and Battleship brands on slot machines.

17. Mikohn made and Hasbro accepted monthly or quarterly royalty payments under the Licensing Agreements between 1999 and 2004.

18. Pursuant to the Agreements, with each royalty payment Mikohn sent Hasbro a royalty report revealing how Mikohn calculated royalties.

19. Hasbro did not object to Mikohn's royalty calculations revealed in each royalty report.

20. Pursuant to the terms of the Licensing Agreements, Hasbro audited Mikohn in 2001.

21. Hasbro reported Mikohn to be in compliance with the Licensing Agreements following the 2001 audit.

22. Mikohn and Hasbro amended the Licensing Agreements in 2002 to change the royalty structure.

23. Venturi sent Hasbro an unsolicited letter dated July 21, 2004, in which Venturi claimed that one of Hasbro's licensees underpaid royalties.

24. In the July 21, 2004 letter, Venturi claimed to represent an "undisclosed Principal" who had information "involving millions of dollars in royalties that [Hasbro] did not receive...."

25. The July 21, 2004 letter requested that Hasbro pay a percentage of whatever money it recovered based on the information Venturi's client, the "Undisclosed Principal" would provide.

26. On or about September 8, 2004, Hasbro agreed to pay Venturi's "undisclosed Principal" 7.5 percent of whatever money Hasbro could recover from the licensee that licensee identified by the "undisclosed Principal."

27. On or about October 1, 2004, Hasbro and Venturi executed a contract entitled "Finder's Fee Agreement."

28. The Finder's Fee Agreement declared that one of Hasbro's licensees had engaged in "improper and/or unethical accounting practices."

29. Shortly after the Finder's Fee Agreement was executed, Ferl was identified as the "undisclosed Principal."

30. Ferl stated to Hasbro that Mikohn was the licensee referenced in the Finder's Fee Agreement.

31. On or about December 10, 2004 and January 29, 2005, Venturi sent letters to Hasbro stating that Mikohn had improperly calculated royalties.

32. By letter dated February 1, 2005, Hasbro accused Mikohn of improperly calculating and paying royalties and demanded $6,218,213.00 based on a new interpretation of the Licensing Agreements provided by Ferl and/or Venturi.

33. On or about March 7, 2005, Hasbro filed suit against Mikohn in the United States District Court for the District of Rhode Island, C.A. No. 05-106S (hereafter the "Hasbro lawsuit"), alleging breach of contract and seeking damages in excess of $6,000,000.00.

34. During discovery in the Hasbro lawsuit, it was revealed that defendants Ferl and Venturi had offered to sell Hasbro "information" that could lead to Hasbro collecting significantly more money in royalties under the Agreements. The "information" provided by Ferl and/or Venturi was an alternative interpretation of the Licensing Agreements.

35. Venturi and Ferl's role in instigating the Hasbro lawsuit was not known to Mikohn when the Hasbro lawsuit was filed.

36. Mikohn incurred significant expenses defending the Hasbro lawsuit.

**COUNT I**
**CHAMPERTY**

37. Plaintiff repeats and realleges the allegations of paragraphs 1 through 36.

38. At various times between July 2004 and January 2005, Ferl and Venturi advised, procured and encouraged Hasbro to commence an action in the United States District Court for the District of Rhode Island against Mikohn. In doing so, Ferl and Venturi maliciously intended to injure, harass and damage Mikohn, and to put Mikohn to great vexation and expense, unlawfully, maliciously and without reasonable or probable cause, and without having any legitimate interest in Hasbro's action against Mikohn.

39. Pursuant to the Finder's Fee Agreement, Ferl and Venturi took a financial interest in the outcome of the Hasbro lawsuit.

40. Pursuant to the terms of the Finder's Fee agreement, Ferl and Venturi helped Hasbro prosecute the Hasbro lawsuit.

41. Ferl and Venturi helped Hasbro prosecute its lawsuit in exchange for a financial interest in the outcome of the Hasbro lawsuit.

42. In helping Hasbro prosecute its lawsuit in exchange for a financial interest in the outcome of the Hasbro lawsuit, Ferl and Venturi committed champerty.

43. Mikohn was damaged as a result of Ferl's and Venturi's champertous actions.

**COUNT II**
**TORTIOUS INTERFERENCE WITH CONTRACT**

44. Plaintiff repeats and realleges the allegations of paragraphs 1 through 43.

45. Ferl and Venturi had knowledge of the existence of the Agreements between Mikohn and Hasbro.

46. Ferl and Venturi intentionally interfered with the Agreements.

47. Mikohn was damaged as a result of Ferl's and Venturi's interference.

**COUNT III**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

48. Plaintiff repeats and realleges the allegations of paragraphs 1 through 47.

49. Mikohn was engaged in an advantageous business relationship with Hasbro for economic benefit.

50. Ferl and Venturi knew that Mikohn was engaged in an advantageous business relationship with Habsro for economic benefit.

51. Ferl and Venturi intentionally interfered with Mikohn's business relationship with Hasbro through improper means and with improper motives.

52. Mikohn lost the advantage of its business relationship with Hasbro as a direct result of Ferl's and Venturi's wrongful conduct.

**COUNT IV**
**DEFAMATION**

53. Plaintiff repeats and realleges the allegations of paragraphs 1 through 52.

54. At various times between July 2004 and January 2005, Ferl and Venturi intentionally published false and defamatory statements – both written and spoken – about Mikohn to Hasbro.

55. Ferl and Venturi were not privileged to publish such statements about Mikohn to Hasbro.

56. Ferl and Venturi published the defamatory statements with actual knowledge that they were false, or with reckless disregard to its truth or falsity, or with negligence.

57. Plaintiff is not a public figure and defendants' defamatory statements do not involve a matter of public concern.

58. Mikohn was damaged as a result of such statements.

**COUNT V**
**UNJUST ENRICHMENT**

59. Plaintiff repeats and realleges the allegations of paragraphs 1 through 58.

60. Pursuant to the Finder's Fee Agreement, Ferl and Venturi are to be paid 7.5 percent of the "amounts actually received by Hasbro from [Mikohn]" excluding Hasbro's costs.

61. Mikohn is the source of "amounts actually received by Hasbro" as described in the Finder's Fee Agreement. Thus, the benefit conferred upon Ferl and Venturi under the terms of the Finder's Fee Agreement has been or will be conferred by Mikohn.

62. There is appreciation by Ferl and Venturi of such benefit.

63. Ferl's and Venturi's acceptance of such benefit under the circumstances present here render it inequitable for Ferl and Venturi to retain that benefit.

## COUNT VI
## CIVIL CONSPIRACY

64. Plaintiff repeats and realleges the allegations of paragraphs 1 through 63.

65. Ferl and Venturi acted together to engage in champertous acts, to tortiously interfere with Mikohn's contracts and beneficial business relations with Hasbro, and to defame Mikohn.

66. Ferl and Venturi had a meeting of the minds regarding the objects of engaging in champertous acts, tortiously interfering with Mikohn's contracts and beneficial business relations with Hasbro, and defaming Mikohn.

67. Ferl and Venturi engaged in overt wrongful and unlawful acts when they solicited and forged a champertous agreement with Hasbro, tortiously interfered with Mikohn's contracts and beneficial business relations with Hasbro, and defamed Mikohn to Hasbro.

68. Mikohn was damaged by the acts of Ferl and Venturi.

WHEREFORE, Progressive Gaming International, Inc. requests judgment in its favor and against Greg Venturi, Esq. and John Ferl, including:

a. compensatory damages for the cost of defending the Hasbro lawsuit,
b. compensatory damages for the cost of resolving the Hasbro lawsuit,
c. compensatory damages for the loss of the Yahtzee and Battleship Agreements,
d. compensatory damages for injury to Mikohn's business relationship with Hasbro,
e. compensatory damages for injury to Mikohn's reputation,
f. disgorgement of all profits received by Ferl and Venturi under the Finders Fee Agreement,
g. punitive damages,
h. prejudgment interest,
i. post judgment interest,

j. attorneys' fees,
k. costs, and
l. such other relief as this Court may deem proper.

**Plaintiff demands a jury trial on all issues so triable.**

Brooks R. Magratten, No. 3585
Michael J. Daly, No. 6729
Thomas Connolly, No. 7497
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
bmagratten@vetterandwhite.com
mdaly@vetterandwhite.com

Dated: 1/9/08