Greg J. Venturi
Attorney-at-Law Bar No. 37313
1533 ½ Centinela Ave.
Santa Monica, CA 90404 (310) 828-4000 Fax No. (310) 821-0960
Greg.Venturi@yahoo.com
In Propria Persona

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **PROGRESSIVE GAMING INTERNATIONAL, INC.**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**GREG VENTURI and JOHN FERL**<br><br>**Defendants.** | } | **C. A. No. CA 08 013S**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS (12 (B) (2) and 12 (B) (6) RULES OF FEDERAL PROCEDURE); DECLARATION IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br>**Date:**<br>**Time**<br>**Dept.** |

## I. Notice of Motion and Relief Sought

**Notice is hereby given** that at the date, time and place above shown, Defendant, GREG VENTURI will move and does hereby move to dismiss the Complaint pursuant to 12 (B) (2) and 12 (B) (6) of the Federal Rules of Procedure, and for judgment on the pleadings.

## II. Grounds for Motion

Greg Venturi, a defendant in this action, contends that this court lacks personal jurisdiction over him, at least in connection with the claims alleged in Plaintiff's Complaint and/or that the Counts in the Complaint severally and/or jointly fail to State a cause of action against him.

In support of this contention, Greg Venturi shows:

1. Defendant, Greg Venturi I an adult individual, residing in California, and licensed as a lawyer therein, and doing business as an attorney in Santa Monica,

CA. and has not consented in any way to be sued in this State.

2. Defendant, Greg Venturi does not have the minimum contacts with this State so as to invoke limited personal jurisdiction over him in connection with the claims alleged by Plaintiff.

3. Defendant, Greg Venturi, does not have "minimum contacts" with this State sufficient to justify the exercise of general personal jurisdiction over him.

4. This complaint has as one underlying gravamen allegations of written defamation which a) don't rise to the level of libel or slander, and therefore don't state causes of action, b) are barred by the statute of limitations, c) are not false or alleged to be false, d) are not statements of fact, but rather of opinion, and e) have been released in a recent settlement of litigation here in the Federal District Court in Rhode Island.

5. The other gravamen, in Count I. of the Complaint is alleged to be Champerty, fails to state a claim upon which relief can be granted, to wit:

6. Count II-Tortious Interference with Contract fails to state a claim upon which relief can be granted, and Count III-Tortious Interference with Business Relations fails to state a claim upon which relief can be granted. Count IV-Defamation fails to state a claim upon which relief can be granted in that there are no allegations in the complaint which plead libel or slander. Count V-Unjust Enrichment fails to state a claim upon which relief can be granted. Count VI-Civil Conspiracy fails to state a claim upon which relief can be granted. All of the issues raised therein have been settled, and Defendant, Greg Venturi, who is the agent of Hasbro for purposes of the litigation referred to in the complaint, has been released pursuant to a written settlement in Hasbro v. Mikohn, C.A. No. 05-106S

7. Defendant, Greg Venturi, is entitled under Rule 12 (b) (2) to have this court dismiss the Plaintiff's action for lack of personal jurisdiction over this Defendant, and for failure to state a cause of action against him, or transferred to California, which is The residence of the Defendants.

8. All of the facts set forth above are sworn to in the Affidavit of Greg J. Venturi.

9. The law governing personal Jurisdiction in this case is more fully explained In the following Memorandum of Points and Authorities

## III. Support for Motion

This motion is based upon this notice, the Motion, the files and records of the Court, the points and authorities in support of this motion, and such testimony or argument as may

be made at hearing.

Dated: January 31, 2008

GREG J. VENTURI, in Propria Persona

## IV. POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### A. FACTUAL BACKGROUND.

Defendant, and moving party, Greg Venturi, is an attorney licensed to practice and practicing in Santa Monica, California, and a resident of the State of California. He contacted Hasbro Corporation, a Rhode Island Corporation, with its principal place of business in Rhode Island, on behalf of an undisclosed principal who had information from persons associated with Mikohn, now Progressive Gaming, a Nevada Corporation, doing business principally in Nevada, to the effect that Mikohn had understated casino machine revenues derived from Licensing agreements with Hasbro. Hasbro drafted an agreement with him, wherein it had the sole discretion to decide whether or no to pursue an action against Mikohn, (and to decide what the nature of the counts in that suit would be) and to pay the undisclosed principal a finder's fee. The Venturi-Hasbro agreement was drafted by Hasbro in Rhode Island, and accepted and signed by Defendant, Greg Venturi, in California. Said Defendant had no duties to be performed in Rhode Island, and no duty to participate in the litigation, if any; and was not obligated to give any testimony, or be a witness, or to give any testimony of sufficient weight and materiality so as to influence the Litigation, if Hasbro proceeded against Mikohn.

Hasbro, in "its sole discretion," opted to pursue litigation against Mikohn in

Rhode Island, and that case has been settled, pending final payment by Mikohn to Hasbro of the full settlement amount. Defendant and moving party, Greg Venturi, did not participate in the Hasbro v. Mikohn litigation or provide any information of a material nature regarding the issues of that suit. He was, however, deposed by Mikohn therein, pursuant to subpoena.

Mikohn is not a resident, principally officed, or officed in Rhode Island, and has no other contacts with Rhode Island other than its casino gaming licensing agreements with Hasbro, which was to be performed by Mikohn outside of Rhode Island, princ-ipally in Nevada.

**B. DISCUSSION.**

**1. THE MINIMUM CONTACTS NECESSARY FOR PERSONAL JUR-ISDICTION ARE NOT PRESENT HERE.**

**A. PLAINTIFF'S APPARENT "FORUM SHOPPING" IS REASON ENOUGH FOR A TRANSFER TO CALIFORNIA DISTRICT COURT WHERE DEFEND-ANTS RESIDE.**

To be blunt, it appears that Plaintiff, Progressive Gaming International, Inc. (hereinafter Referred to as "Mikohn") is "forum shopping" to get a state which has a longer statute of limitations than would otherwise be the case if the matter is filed in Nevada or California.[1]

---

1
Nevada Statute of Limitations - Libel and Slander, 2 years 11.190 4(c); Personal Injury, 2 years 11.190 4 e; Catch-all torts 4 years 11.220 NEV. STATS.
CA Statute of Limitations - Slander 1 year C.C.P. 340 c ); Libel 1year (C.C.P. 340 c); Catch all 4 years (C.C.P. 343. Rhode Island Statute of Limitations - Slander 1 year, Libel 3 years *Mikaelian v. Drug Abuse Unit* 501 A2d 721 (R.I. 1985) Tortious Interfer-ence with Contract 1 year, Tortious Interference with Bus. Relations 3 years *McBurney v. Ruskowski* 687 A2d 447 (R.I. 1997)

Granted, there is ample authority for finding personal jurisdiction in the state of a Plaintiff's residence, but in the case at bar, Mikohn is not a resident of Rhode Island. Secondly, in determining what defendant Venturi can reasonably foresee, a common test in decisions involving minimum contacts, it is important to note that Plaintiff Mikohn is relying on one contract made in and/or with a Rhode Island resident, Habro, but that a) it is not made with the Plaintiff, and b) Plaintiff is not resident or officed therein. Plaintiff argues that Venturi purposely sought out Hasbro, made statements to it in Rhode Island, and contracted with it in Rhode Island. Assuming arguendo, that is true, what he is said to have reasonably forseen ought to be limited to his dealings with Hasbro, a Rhode Island Company, and not be assumed to extend to Mikohn, a company which was known to him to be operating in Nevada, and which he did not purposely set out to deal with, by contract, or at all. On the contrary, where only one contract is anticipated this Court should be hard put to find a constitutionally "minimal contact" where, as here, the Plaintiff is neither a party to the single transaction, nor a resident/principally officed, or officed entity in Rhode Island.

The forum shopping issue is especially pertinent when one compares the applicable California Statute of Limitations with Rhode Island Statutes, for Champerty, Libel, Slander, Defamation, Interference with business and contractual relations, or Unjust Enrichment. If the complaint allegations with regard to Libel and Slander are not sufficient, there are no facts from which defamation, Interference with business or contractual relations, or unjust enrichment can be inferred. For example, theories such as civil conspiracy or unjust enrichment depend upon the nature of the underlying

Cause of Action (Count). McFaddin v. H. S. Crocker Company (219) CA 2d 585, 33 Cal Rptr. 389. That is to say, if the underlying count fails to state a cause of action, then so does the count from which it is spawned. No slander or libel pleaded means no defamation, no tort from which there can be wrongful interference with business, or contractual relations, no tort from which unjust enrichment can be granted, and so forth.

Even if it were assumed that the facts alleged are libelous, which Defendant disputes, the Rhode Island three year statute statute of limitation for libel cuts the Plaintiff off from recovery for those statements made prior to three years before the date of filing of the complaint. (1-28-08) Paragraph 23 of the Complaint claims that by way of an Unsolicited letter, dated July 21, 2004, "Hasbro underpaid royalties." Even if, this were construed to be libel, a liability claim is barred by Rhode Island Case law establishing a 3 year statute of limitation from the date of the libel. Likewise, paragraphs 24 and 25 don't seem to rise to the level of libel, but even if they were deemed to do So, they would also be barred, since they were allegedly made on July 21, 200 more Than three years prior to the date the complaint was filed. Paragraph 28 is of the same Ilk as Paragraphs 23-25. Neither "improper and/or unethical accounting practices" Seem libelous, but even if they were deemed to be, they are also barred because They were made over three years prior to the commencement of the suit. The only Allegation remotely resembling libel which is also alleged to have been made less than three years prior to commencement of this case is Paragraph 31, which states that on or about December 10, 2004 (which would be barred by the three year statute

of limitation, if it were in fact libel-which it is not-) and January 29, 2005 "Venturi sent letters to Hasbro stating that Mikohn had improperly calculated royalties."
As will be discussed later, whether or not royalties are improperly calculated is a matter of opinion, which would be entitled to an absolute privilege in Rhode Island, even if not made during the pendency of litigation. Interestingly, in an apparent attempt at apologetics, at Paragraph 32 of the complaint, the Plaintiff seals its own doom, insofar as properly alleging that Defendant Venturi published a false FACT, by itself contradicting the factual nature of the alleged writing. Paragraph 32 opines that a letter dated February 1, 2005 wherein Hasbro accused Mikohn of "improperly calculating and paying royalties" was "based on a new interpretation of the licensing agreement. Assuming arguendo that allegation to be true, then both Defendant Venturi's alleged statement AND Mikohn's allegation that it was based upon a new interpretation are OPINIONS, and neither is actionable as libel, if, as is discussed below, opinion is afforded an absolute privilege under Rhode Island Law, or is simply not libel.

**2. NO CAUSE 0F ACTION IS STATED FOR CHAMPERTY IN COUNT I 0F THE COMPLAINT.**

Champerty and Maintenance do not exist as viable causes of action in California. Muller v. Muller (1962) 206 Call App731, 23 Cal Rptr 900

A contract may be champertous or contrary to public policy where, for a share of the recovery or for compensation contingent on the successful outcome of the suit, A person agrees to collect, procure, and furnish evidence of a particular character or such evidence as is necessary to win the case. (see *Merrill v. Stewart* (1941) 220 N.C.

326, 17 S.E. 2d 458) On the other hand, although compensation is contingent on the amount eventually collected or recovered, an agreement is not champertous or against public policy where the party supplying information or evidence does not undertake to pay the expenses of the litigation, (See *Belfonte v. Miller* (1968) 212 Pa. Super. 508, 243 A.2d 150), where the object and tendency of the agreement is not to promote successful litigation, but is merely to place the true facts concerning an entity's affairs and accounts, or where the person is to carry on other innocuous activities in connection with the evidence. These rules are particularly applicable where, as here, the person supplying the information (which is clearly not Defendant Venturi) is not obligated to Give testimony or be a witness, or if he or she does testify, the testimony will not be of sufficient materiality or intend to influence the litigation. A copy of the alleged Venturi-Hasbro agreement, marked Exhibit "A." shows that Defendant Venturi's duties thereunder are not "champertous," but merely to vouch for the likelihood that his client has information which is true. Not only is he not obligated to pay Any expenses, nor to testify, it is clear that he is acting on behalf of an "Undisclosed Principal." Hasbro has the sole discretion as to whether to proceed with a suit, or to drop the matter, once someone other than Defendant Venturi provides information.

**3. RHODE ISLAND CASE LAW GIVES DEFENDANTS A) A QUALIFIED PRIVILEGE PRIOR TO AND AFTER LITIGATION, B) AN ABSOLUTE PRIVILEGE DURING LITIGATION, AND C) AN ABSOLUTE OPINION PRIVILEGE.**

California Civil Code Section 47, provides an absolute privilege, before, during and after litigation for statements related to the subject matter of the litigation. The Rhode Island litigation privilege is absolute if made during ongoing judicial, or quasi judicial

proceedings. Kissell v. Dunn (1992) 793 F.Supp. 389 (DRI 1992) Even if libelous per se, If published in good faith and the alleged libeler believes he has alegal, moral, or social duty to speak out or that to speak out is necessary to protect his own interests, there is a qualified privileged. Monticelli v. Mine Safety Appliance Co. (1968) 104 RI 579 247 A2d 303 See also Nelson v. City of Cranston ex rel. McAteen (DRI 2000) 116 F. S. 2d 260, where the qualified privilege was found to apply where the alleged libeler believed he was protecting a third party.

What is particularly on point here is that Rhode Island recognizes an absolute opinion privilege. Gertz v. Robert Welsh, Inc. 418 U.S. 323, 94 S.Ct. 2997 See also Hawkins v. Oden 549 A2d 481 (R.I. 1983) where a statement in the form of an opinion was held to be actionable only if it implies the allegation of undisclosed defamatory facts, as the basis for the opinion.

The Random House Dictionary, Unabridged Edition, 1966, defines "opinion," and "interpretation" which at Paragraph 32 of the Complaint is the Plaintiff's own characterization of Defendant Venturi's allegedly libelous statement, similarly:

> "Opinion"n. 1. A belief or judgment that rests on grounds insufficient to produce certainty. 2. A personal view, attitude, or appraisal; .....3. The expression of a personal view, attitude, appraisal, or judgment 4. The expression of a formal or professional Judgment ...
>
> "Interpretation" is in the complaint's context, 3. An understanding of another's words or deeds. "To interpret" v.t. 1. To set forth the meaning of; explain; explicated; elucidate 2. To construe, or understand in a particular way....

Thus, Plaintiff's own (apologetic) pleading alleges the absolute privilege afforded to an opinion, and accidentally reflects the shortfall in sufficiency.

In Froess v. Bulman 610 F.Supp. 332 (R.I. 1984) an attorney wrote a letter giving his

opinion of a psychiatrist's diagnosis of a child in a custody dispute. Held: absolute opinion privilege. Wechtel v. Storm 796 F. Supp. 114 (S.D. N.Y. 1992) sets out the factors in finding the privilege or denying it:

a) Opinion is not a factual proposition which is objectively capable of being proven true or false.
b) Does the statement create outrageous overhead and unrelated business expense?
c ) test: Would the ordinary reader consider the statement to be factual or opinion?

**4. THE WRITTEN STATEMENTS ALLEGED DO NOT RISE TO THE LEVEL OF SLANDER OR LIBEL, AND/OR ARE CUT OFF BY THE APPLICABLE STATUTE(S) OF LIMITATIONS.**

Libel is the written statement of a fact which is untrue. Paragraph 32 of the Complaint explains the accusation of "improperly calculating and paying royalties" as " based on a new interpretation of the licensing agreements provided by Ferl and/or Venturi.

**5. IF SLANDER AND LIBEL ARE NOT STATED AND/OR BARRED BY THE STATUTE OF LIMITATIONS, AND AN ACTION FOR CHAMPERTY IS NOT STATED, THERE ARE NO TORTS PLEADED FROM WHICH THE REMAINING COUNTS CAN SPRING.**

The Counts for defamation, civil conspiracy, tortuous interference, and unjust enrichment need actionable facts to be pleaded for them to be viable. Without Champerty or libel having been factually pleaded, the remaining causes are devoid af substance, and the conclusions of defamation, civil conspiracy, tortuous interference alleged must all fail for lack of factual allegations which show liability.

**6. THE RELEASE WHICH EMANATED FROM THE SETTLEMENT OF THE HASBRO v. MIKOHN MATTER, AND IS STILL AWAITING FINAL PAYMENT, IS STILL UNDER THE JURISDICTION OF THIS COURT, AND**

**BARS, ESTOPS, AND/OR RELEASES DEFENDANT, WHO IS (INSUFFICIENTLY) ALLEGED TO BE A "CHAMPERTOUS" AGENT OF HASBRO.**

Albeit not champerty which is alleged, but rather the factually unsupported conclusion of champerty, in the complaint, it seems appropriate to point to the settlement of the underlying Hasbro v. Mikohn case as an alternative means of determining that there will ultimately be no recovery against Defendants, and that the Complaint is a renvoir not appropriately brought to this court, or trial. If this motion is denied, Defendant would cross-complain against Hasbro for implied or actual indemnity, thereby triggering court costs for Hasbro which were intended to be ended with the settlement of the Hasbro v. Mikohn case which is pending final payment later this year, and/or next.

It is submitted that the motivation of plaintiff intentionally to breach its settlement agreement with Hasbro, and to saddle both Hasbro and its allegedly champertous agent, Defendant Venturi, with Court costs and expenses is against public policy in the effici ent administration of the judicial system. If only to keep this thinly veiled attempt to inflict expenses upon those who might in the future, or who have already, been "whistle blowers," or assisting "whistleblowers," or assisting a contracting party with its rights under a contract, this court ought to dismiss this matter outright, or abate it.

It is Defendant's understanding that this Court is the same court which was assigned to the Hasbro v. Mikohn litigation, and that the pleadings, which involved a dismissal of the fraud allegations, prior to settlement, would carry an absolute privilege under Rhode Island law because they were made during the pendency of the suit. Defendant Venturi would be, whether champertous or not, an agent of Hasbro, a settling party, and

presumably covered by the release covering the settlement. As a simple matter of supporting the public policy involved in bringing an end to litigation for the parties and their agents, this Court, which still has jurisdiction over Mikohn (Progressive Gaming International, inc. can order this action abated, as a violation of the settlement awaiting final payment in that suit.

**7. EVEN IF SUFFICIENT FACTS ARE STATED FOR PERSONAL JURISDICITION, THERE ARE INSUFFICIENT FACTS TO ESTABLISH VENUE.**

As a rule, more substantial facts are required for venue, than are necessary to establish The minimum contacts necessary for personal jurisdiction. For example:

The transfer factors are:

A. convenience of the parties and witnesses
B. relative ease of access to proof
C. location of events (I.e. locus of the operative facts.
D. Plaintiff's choice of forum
E. pendency of related litigation in the transferee forum.
F. relative congestion of courts
G. public interest in local adjudication of a local controversy
H. Relative familiarity of transferee court with applicable law

As was mentioned above, a Plaintiff's choice of forum is generally given substantial weight when the forum is the district in which the Plaintiff resides, but if the chosen forum is not exclusively the place where the cause of action arose, choice of forum is only given consideration equal to other factors, including interests of justice, in determining whether the casue should be transferred to a different forum. In *Robinson v. Town of Madison* (1990) 752 F. Supp. 842, 846, the case involved alleged defamatory statements made in Wisconsin and reported in Illinois. In that case, a mother of Two whose children were killed in a house fire and then later moved to Illinois, brought A defamation suit in Illinois. Despite the fact that the Plaintiff was an Illinois resident

when she brought the case, the Illinois court transferred the defamation case to Illinois Where the defamation was made. In the case at bar, Plaintiff is not a resident of Rhode Island, as discussed above, and the alleged defamatory language was not made in Rhode Island, but rather in California, by a California resident, about a Nevada Corporation which is not, and has never maintained offices, principal or otherwise, in Rhode Island.

In Archdiocese of Milwaukee v. S.C. (2003) 112 CA 4th 423, 5 CR 3d 154 it was Held that the initial burden is on the plaintiff to establish jurisdiction when challenged by the Defendant; and the unverified complaint had no evidentiary value to determine personal jurisdiction. *Cerberus Partners v. Gadsby and Hannah, LLP* (2003) 836 A. 2d 1113 discusses the Rhode Island long arm statute, applying the "purposely avail" test. Its two cornerstones are volunt ariness and foresee ability. Does the defendant Deliberately create "continuing obligations" between himself and the forum state? If so, he has purposely availed himself, and personal jurisdiction is proper. However, Defendant's lone contract with a Rhode Island corporation involving the conduct of A corporation based and performing in Nevada, is not the kind of "continuing oblig-ation" between parties in **privity** about which the courts find deliberate availing of The forum state by a defendant. For example, in *Hall v. La* Ronde (1997) 56 CA 4th 1342, 66 CR 2d 399 the Plaintiff and Defendant were in privity of contract through e-mail and telephone contact. In *West Corp. v. S.C.* (2004) 116 CA 4th 1167, 11 CR 3d 145 the Plaintiff and defendant contracted with each other, out of state. Here, There is no **continuing** deliberate availing of the state of Rhode Island, and no

privity of contract between Plaintiff and Defendant. Defendant did not forsee Availing himself of Rhode Island visa vis the Defendant.

**V. CONCLUSION.**

This court should dismiss the complaint because no slander, libel or champerty is sufficiently alleged. No false statement of FACT has been alleged which rises to the Level of slander or libel, and the complaint itself calls the written statements purported to have been made by Defendant Venturi, "based upon a new interpretation," which is essentially an explanation of an opinion, entitled to absolute privilege under Rhode Island law, even though not made during the pendency of litigation.

Because the Hon. Judge Smith presided over the Hasbro v. Mikohn litigation, and Has been assigned this case, he has the power to abate this action, and/or dismiss it, In the interest of justice and public policy.

If the Court opts not to dismiss, or abate, it should order the matter transferred to California, where the defendants reside, and where the insufficiently pleaded torts arose.

**Dated: Feb. 10, 2008**

**Respectfully submitted,**

**GREG J. VENTURI,**
**In propria persona**

**V. DECLARATION IN SUPPORT OF MOTION TO DISMISS**

**I, GREG J. VENTURI, say:**

1. I am an attorney licensed to practice and practicing law in Santa Monica California; and a resident of the State of California. I am a party to this action and

am familiar with the matters herein. If called upon to testify I can and would competently and with first hand knowledge, testify to the following.

2. I have never had the pleasure of visiting the state of Rhode Island, and have no economic, business, social ties, connection Involvement with Rhode Island whatso-ever. As a practicing attorney, I am familiar with the laws of the State of California, and expert therein, but had no experience whatsoever with the laws of Rhode Island Prior to the commencement of this action. I negotiated the contract with Hasbro referred to in the complaint entirely in California, for John A. Ferl, the other def-endant herein, who I know of my own knowledge, is a resident of California, and who had also worked for a time in Nevada. During the times mentioned in the com-plaint, neither he nor I ever went to Rhode Island, and neither he nor I anticipated, or expected to have any duties, or to perform any acts in Rhode Island, either under the contract referred to in the Complaint, or at all. I accepted and signed the con-tract in Santa Monica, California, and my only promise thereunder was to vouch for the undisclosed principal, John Ferl, who was a California resident and who was ex-pected to perform by contacting former Mikohn employees, residing and working in Nevada. John Ferl, who is the other defendant herein, was not an employee of Mik-ohn, and had no first hand knowledge of any of the Hasbro-Mikohn dealings.

14

3. Consequently, the only contact alleged in the Complaint involves correspond-ence I wrote in California, about a Nevada Corporation. I have not executed, nor been involved with any other contracts with individuals or entities domiciled or residing in Rhode Island. To my knowledge, the Hasbro-Mikohn licensing agreements referred to

In the comlaint involved duties to be performed by Mikohn related to casino machines and accounting to be performed outside the state of Rhode Island.

by Mikohn

4. There is no cause of action for Champerty in California; and Section 47 of the Civil Code provides a broad and absolute privilege and immunity for oral or written Statements related to litigation, before, during and after litigation for lawyers, in particular. Rhode Island case law provides an absolute immunity for statements made during the pendency of litigation, and a qualified privilege for statements made prior to litigation if made in good faith. All of my written and oral statements made during or prior to the Hasbro v. Mikohn case were made in good faith. I have never repress-ented Mikohn or Progressive Gaming, nor have I had any contact with that firm what-soever. My sole purpose in representing Mr. Ferl and contacting Hasbro was to keep him out of trouble, and to get a fair compensation for my time and effort.

5. I have not provided any information whatsoever to Hasbro in connection with the litigation referred to in the Hasbro v. Mikohn suit, referred to in the complaint, and have not assisted Counsel or the Plaintiff therein, contrary to the allegations of the complaint. I am not a party to the underlying Hasbro v. Mikohn suit, and my only involvement therein was when I was subpoenaed by Mikohn (the alleged predecessor to Progressive Gaming International, Inc., Plaintiff herein, hereinafter referred to as "Progressive") None of my answers to any of the questions asked by the attorney taking my deposition had any bearing on any of the substantive issues of the underlying case. To this day,

I do not have a copy of any of the pleadings of the Hasbro v. Mikohn case; I am not aware of any of the terms of the settlement thereof, except for the amount of the settlement; and I was never consulted concerning the issues of the case, by Hasbro or its legal representatives. Under the terms of my agreement with Hasbro, I am the (legal) agent for the undisclosed principal, but I have no duties to assist, nor did I, in fact, assist in the litigation. Hasbro had the sole right and discretion to litigate, or not to litigate, but its decision was not based upon any information I imparted to it, whatsoever. And Hasbro had no duty to communicate with me about the course of the litigation if it opted to litigate, other than to inform me if it recovered, and if so, how much. a copy of the agreement is attached hereto, marked Exhibit "A." Moreover, I did not pay for any of the expenses of litigation

6. Under the terms of Exhibit "A," whether or not Hasbro decided to commence Legislation was within its sole discretion, and nothing therein required me to furnish information regarding the Hasbro-Mikohn contract. I was not obligated to give or expected to be a witness or give any testimony, or to provide any testimony intended to influence litigation.

7. The statements referred to in the complaint regarding Mikohn's accounting were made in excess of three years prior to the filing of the Complaint, with the with the exception of a reiteration on January 10, 2005. All of these statements, however, are **not statements of fact**, but **statements of opinion**, just as Plaintiff's allegations at Paragraph 32 of the complaint to the effect that the alleged improper

"calculation and paying of royalties" was "based on a new interpretation of the Licensing Agreements…" and at Paragraph 34, to the effect that "The "information" Provided by Ferl and/or Venturi was an alternative **interpretation** of the Licensing Agreements." To me, an interpretation, albeit "new" is, ipso facto, an opinion.

8. Again, I provided no "information" regarding these alleged Licensing Agreements, whatsoever. I was deposed by Mikohn's attorneys after the litigation commenced, but I gave no information, and had no information which would be of sufficient weight or materiality to to influence the litigation between Hasbro and Mikohn.

9. The underlying Hasbro v.Mikohn case has been settled, but is still active, pending payment to Hasbro of the settlement amount. I have been advised of the amount(s) of the settlement only, which is to be paid in two stages, and not of the terms of the settlement, but Mikohn - Progressive Gaming would know that there is a release, presumably including agents of Hasbro, of which it, Mikohn, is alleging I am one, in its Champerty count (I) of the Complaint.

9. It is my understanding that the Complaint, which is unverified, is not sufficient to establish personal jurisdiction.

10. In representing John Ferl, I acted in good faith, and had no malicious or

17

malevolent motive against Mikohn, with whom I had had no contact, until its attorneys subpoenaed me in the Hasbro v. Mikohn Case.

I certify and swear that the foregoing is true. Executed this 31st day of January, 2008, in the County of Los Angeles, California.

2/15/08

GREG J. VENTURI

SUBSCRIBED AND SWORN BEFORE ME on February 15 2008 at Los Angeles, CA

(Notary Seal)

MARTHA NEGASH
Commission # 1567908
Notary Public - California
Los Angeles County
My Comm. Expires Apr 10, 2009

NOTARY PUBLIC in and for the State of California
My commission expires 4-10-2009