# FINDER'S FEE AGREEMENT

This Finder's Fee Agreement (this "Agreement") is entered into as of the 23rd day of September. 2004, by and between Hasbro. Inc. a Rhode Island corporation ("Hasbro"), with an address of 1027 Newport Avenue, Pawtucket, Rhode Island 02862-1059, and Greg J. Venturi, Esquire ("Attorney Venturi"), agent for an undisclosed principal ("Principal"), with an address of c/o Greg J. Venturi, Esquire. 1533 ½ Centinela Avenue, Santa Monica, California 90404.

WHEREAS, Attorney Venturi has informed Hasbro that his client, Principal, is willing to share with Hasbro, for a finder's fee, information involving millions of dollars in royalties that Hasbro should have but did not receive due to the improper and/or unethical accounting practices of an undisclosed licensee of Hasbro;

WHEREAS, Hasbro has agreed to pay Principal a finder's fee in accordance with and subject to the terms and conditions of this Agreement:

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Finder's Fee. Subject to the terms and conditions of this Agreement, Hasbro shall pay to Principal a finder's fee (the "Finder's Fee") in the amount of seven and one-half percent (7.5%) of Hasbro's "Net Underpaid Royalties Received," as more particularly provided below:

(a) The term "Net Underpaid Royalties Received" shall mean amounts actually received by Hasbro from "Licensee" (defined below) on account of royalties unpaid or underpaid by Licensee to Hasbro for previous periods (through the quarter ending September 30, 2004) to the extent attributable to information disclosed by Principal that was not previously known by or in the possession of Hasbro, less all costs, expenses and charges incurred by Hasbro in connection with investigating and evaluating the information disclosed by Principal, investigating and evaluating possible claims against Licensee, and recovering or seeking to recover amounts from Licensee, including, without limitation, costs, fees, expenses and charges, including disbursements, of attorneys and accountants and those working for or on behalf of attorneys and accountants, and costs, fees, expenses and charges of Hasbro in connection with meeting with Licensee and its officers, employees and representatives, and less royalties, agency fees or other amounts due from Hasbro to inventors, licensors, other intellectual property owners or agents. An amount shall not be counted toward Net Underpaid Royalties Received unless and until Hasbro has collected the same and is not subject to any counterclaims or appeals of Licensee or any other person or entity. For clarity, the "costs, fees, expenses and charges" that may be deducted in calculating Net Underpaid Royalties Received shall not include the salaries of persons currently employed by Hasbro, or other fixed expenses, such as rent, depreciation or the like which are incurred irrespective of the matters that are the subject of this Agreement.

(b) Hasbro shall make Finder's Fee payments to Principal within thirty (30) days after Hasbro's receipt of applicable funds. Such payments shall be made to "Greg J. Venturi, Esquire, in Trust for Principal," at the address of 1533 ½ Centinela Avenue, Santa Monica, California 90404. Principal acknowledges that Hasbro may not know the complete amounts deductible in order to compute Net Underpaid Royalties Received within such thirty (30) day period (for example, but without limitation, attorneys' or accountants' fees not yet billed to Hasbro), and Hasbro in calculating Net Underpaid Royalties Received may make estimated deductions to account for such amounts, subject to adjustment when the actual deductions are established.

© 2004 Hasbro, Inc. All Rights Reserved. BRK 09/21/04. This document shall not be deemed an offer and shall not be binding unless signed by all parties.

20

EXHIBIT A

2. Disclosure of Information.

(a) Promptly after both parties have signed this Agreement. Principal shall disclose to Hasbro the identity of Principal. the identity of the company or companies (collectively, "Licensee") that Principal believes owes Hasbro royalties, and the information, oral or written, that Principal has or is aware of that Principal believes supports the claim for royalties.

(b) Hasbro agrees not to disclose Principal's name and Principal's sources to Licensee or any third-party, without the consent of Principal; provided, however. that Hasbro may disclose the same in connection with any litigation. arbitration or other proceeding with respect to the matters that are the subject of this Agreement, including, without limitation. any litigation involving Hasbro and Licensee and/or Principal. Furthermore, Hasbro may disclose the same if required by applicable laws. rules and regulations, and may disclose the same on a "need to know" basis to Hasbro's outside attorneys and accountants.

(d) Within Hasbro, Hasbro agrees that. unless otherwise consented to by Principal. it will disclose Principal's name and Principal's sources only to the members of the Hasbro Legal Department who are involved with the matters that are the subject of this Agreement and Hasbro's General Counsel. Chief Executive Officer, Chief Financial Officer, President of Hasbro's licensing group (currently called the "Hasbro Properties Group"), and the Vice President of Internal Audit.

3. Representations and Warranties of Principal. Principal represents and warrants to Hasbro that:

(a) Attorney Venturi is the agent for Principal and has the authority to bind Principal to all of the terms, conditions, covenants and agreements of this Agreement, and has the authority to grant the consent of Principal to the extent requested by Hasbro under Paragraphs 2(b) and (c) above;

(b) Principal is not and has never been an employee of Hasbro;

(c) Principal has the legal right to disclose to Hasbro any information, oral or written, that Principal discloses to Hasbro, and such disclosure of information and Hasbro's use of the same will not violate any obligation, duty or contract with respect to confidentiality or non-disclosure of information, or any laws, rules, and regulations, nor give rise to any civil liability on the part of Principal or Hasbro;

(d) Principal has a bona fide, good-faith belief that the information that Principal discloses to Hasbro involves millions of dollars in royalties that Hasbro did not receive from Licensee due to some improper and/or unethical accounting practices;

(e) Hasbro has previously audited Licensee and, to the best of Principal's knowledge, such audits have not revealed the information that will be disclosed by Principal; and

(f) to the best of Principal's knowledge and belief, Principal's sources are not and have never been employees of Hasbro.

4. Indemnification.

(a) Principal shall indemnify and defend (with counsel approved by Hasbro) Hasbro, its parent, subsidiaries, affiliates, and related companies, and each of their respective directors, officers, employees, and agents (the "Hasbro Indemnitees") and shall hold the Hasbro Indemnitees harmless from

any loss, liability, damage, cost and/or expense (including reasonable attorneys' fees) arising out of any claims or suits which may be brought or made against the Hasbro Indemnitees by reason of or relating to or arising from (i) the breach or alleged breach by Principal of Principal's warranties or representations in this Agreement, or (ii) the negligent or malicious conduct of Principal. Hasbro agrees to give Principal prompt written notice of any such claims or suits. Principal's obligations under this Paragraph shall survive the expiration or termination of this Agreement.

(b) Hasbro shall indemnify and defend (with counsel approved by Principal) Principal and shall hold the Principal harmless from any loss, liability, damage, cost and/or expense (including reasonable attorneys' fees) arising out of any claims or suits which may be brought or made against Principal by reason of or relating to or arising from the negligent or malicious conduct of Hasbro in pursuit of collection from Licensee (provided, however, that this shall not apply to the extent that such claims or suits are based on information provided to Hasbro by Principal). Principal agrees to give Hasbro prompt written notice of any such claims or suits. Hasbro's obligations under this Paragraph shall survive the expiration or termination of this Agreement.

5. Cooperation and Assistance. Principal agrees to provide reasonable assistance to and cooperation with Hasbro in connection with the investigation, negotiation and prosecution of any claims by Hasbro against Licensee. Hasbro will reimburse Principal for any reasonable out-of-pocket costs Principal incurs in rendering such assistance and cooperation, provided that Hasbro has approved such costs in advance in writing.

6. Hasbro's Control of Collection Efforts.

(a) Principal acknowledges and understands that Hasbro shall have sole and absolute discretion with respect to investigation and collection of any amounts owed or allegedly owed by Licensee, including, without limitation, the extent and conduct of any investigation or audit of Licensee, any contacts, communications or negotiations with Licensee, whether or not to pursue any claims against Licensee, the conduct of any such litigation or other proceedings, and the settlement and resolution of any claims or allegations against Licensee.

(b) Principal further acknowledges and understands that Hasbro may be aware of royalties unpaid or underpaid by Licensee, with respect to which Hasbro has determined, for its own reasons and in its sole discretion, to compromise, postpone or not to pursue recovery of the same from Licensee, and that in such case Principal shall not be entitled to receive any portion of any such amounts recovered.

(c) Nothing in this Agreement shall be deemed to create any obligation on the part of Hasbro with respect to investigation of the information disclosed by Licensee or the investigation, collection or settlement of any claims or alleged claims against Licensee, nor any obligation to join or assist Principal in any litigation or proceeding involving Principal and Licensee.

7. Books and Records. Principal or its authorized representative will have the right no more than once in any six (6) month period to an examination of the separate records of Hasbro with respect to the calculation of Net Underpaid Royalties Received and payments with respect to the same under this Agreement and will have free and full access thereto for such purpose on reasonable notice and at a mutually convenient time during all reasonable business hours during which the office of Hasbro will be open, and Hasbro will retain such separate records for a period of two (2) years following the making of any such payment. Any such examination will be conducted in such manner as to not unduly interfere with the business of Hasbro. Principal and its representatives will not disclose to any other person, firm, or corporation any information acquired as a result of any such examination; provided, however, that

nothing herein contained will be construed to prevent Principal and/or its duly authorized representatives from testifying in any arbitration or court proceeding with respect to the information obtained as a result of such examination in any proceeding instituted to enforce the rights of Principal under the terms of this Agreement with respect to Finder's Fees payable on account of Net Underpaid Royalties Received.

8. Representations and Warranties of Attorney Venturi. Attorney Venturi represents and warrants to Hasbro that:

(a) he is the agent of Principal and has the authority to bind Principal to all of the terms, conditions, covenants and agreements of this Agreement, and has the authority to grant the consent of Principal to the extent requested by Hasbro under Paragraphs 2(b) and (c) above; and

(b) to the best of his knowledge, the representations and warranties of Principal contained in this Agreement are true and accurate.

9. Miscellaneous.

(a) Entire Agreement; Amendments: This Agreement contains the entire understanding and agreement of the parties (and it incorporates or supersedes all other written or verbal agreements and understandings) with respect to the subject matter, and may be amended or modified only in writing signed by both parties and referring specifically to the Agreement. The paragraph and other headings in this Agreement are for reference purposes only and will not affect the meaning or interpretation of this Agreement.

(b) Governing Law; Severability: This Agreement shall be construed and enforced in accordance with the internal laws of the State of Rhode Island, without giving effects to conflicts of laws principles. The parties hereto consent to the non-exclusive jurisdiction of the courts of the State of Rhode Island, including the United States District Court therein, and the State of California, including the United States District Courts therein, with respect to any dispute arising hereunder. In the event that any provision(s) of this Agreement is adjudicated by a court of competent jurisdiction to be unlawful, unenforceable, invalid, and/or unconscionable, that provision(s) shall be deemed severed from this Agreement and shall not affect the validity or enforceability of the remaining provisions hereof or this Agreement as a whole.

(c) Notices: Any written notice or other communication sent by a party to the other party's address first above-stated shall be deemed received by the other party: (i) on the day of delivery if sent by Federal Express or other nationally recognized courier service; or (ii) three (3) days after deposit in the U.S. Mail if sent certified or registered mail with return receipt requested. It shall be the burden of the sending party to prove the other party's receipt of any notice or other communication sent in any other manner. Such notices or communications to Hasbro must be sent marked "Attention: General Counsel".

(d) No Joint Venture: Nothing in this Agreement is intended to or may constitute the parties as partners or joint venturers, or any party as the agent of the other party, except that Attorney Venturi is the agent of Principal.

(e) Counterparts; Signature: This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of such counterparts together shall constitute one and the same Agreement. This Agreement may be executed by facsimile transmission, and the parties hereto agree that facsimile signatures on a copy of this Amendment shall be effective and enforceable as if they were

original signatures. This document does not constitute an offer and shall not be binding until signed on behalf of all parties.

10. Wizards of the Coast, Inc. For the avoidance of doubt, Principal confirms that in no event shall Hasbro owe Principal any finder's fee or other compensation or consideration with respect to any recoveries made by or any payments made to Hasbro's subsidiary, Wizards of the Coast, Inc. or any of its subsidiaries or affiliates.

IN WITNESS WHEREOF, the undersigned have executed this Agreement AS AN INSTRUMENT UNDER SEAL as of the date first above written.

HASBRO, INC.

By: JANE RITSON-PARSONS
President

Name: ~~Hasbro Properties Group~~
HASBRO, INC.

GREG J. VENTURI, ESQ., as Agent for an undisclosed principal ("Principal")

Greg J. Venturi, Esquire, as agent for an undisclosed principal

The undersigned, Greg J. Venturi, Esquire signs below to confirm the representations and warranties of Paragraph 8 above.

Greg J. Venturi, Esquire



OCT-01-2004 11:18 AM GREG.VENTURI 310 828 4000 P.07