UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Progressive Gaming International, Inc., Plaintiff, | |
| v. | C.A. No. 08-0013-S |
| Greg Venturi and John Ferl, Defendants. | |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This matter comes before the Court on the motions to dismiss or change venue filed by Defendants Greg Venturi ("Venturi") and John Ferl ("Ferl") (collectively, "Defendants") against the Complaint filed by Plaintiff Progressive Gaming International, Inc. ("Progressive"). After consideration of the parties' submissions and the oral argument thereon, the Court partially grants Defendants' motions with respect to Count I of Progressive's Complaint.[1] The motions are otherwise denied.

[1] At oral argument, which Ferl did not attend, the Court denied the entirety of Ferl's motion. However, the Court has decided to partially reverse that decision and grant Ferl's motion with respect to Count I of Progressive's Complaint. Nevertheless, the Court reminds Ferl that in the future it would be to his benefit to accord these proceedings all due respect and consideration.

I. Standard of Review

In ruling on a motion to dismiss for failure to state a claim, a court must determine whether the complaint states any claim upon which relief can be granted.[2] In so doing, the court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded factual allegations as true and giving the plaintiff the benefit of all reasonable inferences. Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997); Carreiro v. Rhodes, Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995).

II. Count One: Champerty

Progressive claims that Venturi and Ferl "advised, procured and encouraged," and more generally "helped," Hasbro in its lawsuit against Progressive in exchange for a "financial interest in the outcome." Because Defendants provided this assistance in exchange for a financial interest in the outcome of the lawsuit, Progressive claims, the agreement between Defendants and Hasbro was champertous.

The specific allegations underlying Progressive's claim of champerty are as follows: On July 21, 2004, Defendant Venturi sent Hasbro an unsolicited letter in which he claimed to represent an "undisclosed Principal" who had information "involving millions of

[2] The Court is aware that Defendants' motions also raised challenges premised upon personal jurisdiction and venue; however, this written order relates only to Defendants' Rule 12(b)(6) motion to dismiss Count I of Progressive's complaint.

dollars in royalties that [Hasbro] did not receive." In exchange for providing further information, Venturi requested that Hasbro pay a percentage of whatever money it eventually recovered from the unnamed licensee. On September 8, 2004, Hasbro agreed to pay the "undisclosed Principal" 7.5% of any money recovered, and this was memorialized in a "Finder's Fee Agreement" executed on October 1, 2004. The Finder's Fee Agreement declared that one of Hasbro's licensees had engaged in "improper and/or unethical accounting practices." Subsequently, Ferl was identified as the "undisclosed Principal" and Progressive was identified as the unnamed licensee. Venturi sent letters to Hasbro in December 2004 and January 2005 in which he detailed Ferl's claim that Progressive was improperly calculating royalties. This led Hasbro to demand from Progressive, by letter dated February 1, 2005, additional royalty payments of $6,218,213. Hasbro followed its demand letter by filing suit against Progressive in this Court on March 7, 2005, alleging breach of contract and requesting damages in excess of $6 million. It was not until sometime during discovery that Progressive learned of the involvement of Venturi and Ferl in the events leading to the lawsuit.

Although a clear definition of champerty has tended to elude universal consensus, this much is agreed: champerty is the act of maintaining a lawsuit brought by another in return for a financial interest in the outcome. See In re Primus, 436 U.S. 412, 424 n.15

(1978) (citations omitted). The essential controversy relevant to Defendants' motions on this count is the proper meaning to be assigned to the term "maintain." If it contemplates even the provision of information known personally, without any attendant financial support, it would be inappropriate to terminate Progressive's claim at this stage. The most recent statement of the Rhode Island Supreme Court on the subject, however, suggests that such assistance is not sufficient to give rise to a viable claim of champerty.

In Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905-06 (R.I. 2002), it was claimed that the defendant attorneys and law firm engaged in a variety of tortious acts toward the plaintiff in the course of rendering advice to a client, the plaintiff's former business partner. The plaintiff alleged that, though they no longer represented the business partner, the defendants continued to direct and finance the business partner's pursuit of the plaintiff in exchange for the business partner's agreement not to pursue a legal malpractice claim against them. Id. Although the cause of action asserted by the plaintiff was maintenance rather than champerty, the Supreme Court made clear that the two are closely related: "[P]ut simply, maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty." Id. at 905 (quoting Osprey,

Inc. v. Cabana L.P., 532 S.E.2d 269, 273 (S.C. 2000) (quoting In re Primus, 436 U.S. at 424 n.15)). In other words, champerty was described by the Supreme Court as a subset of maintenance in which assistance is provided specifically in return for a financial interest in the outcome. See also Kelley v. Blanchard, 82 A. 728, 729 (R.I. 1912) (describing champerty as "a species" of maintenance).

Turning to the plaintiff's claim, which had been dismissed by the trial court, the Supreme Court observed that the plaintiff had alleged that the defendants "advised [the business partner] to pursue litigation against [the plaintiff] that they believed was meritless and that they would finance the cost." Toste Farm, 798 A.2d at 906 (emphasis added). If the plaintiff could prove these allegations, the implication would be that the defendants "acted as a party, and not as counsel" in directing the lawsuit. Id. This, the Court held, was "exactly the type of agreement that is prohibited by the doctrine of maintenance." Id. Consequently, it was error for the trial judge to dismiss the plaintiff's cause of action for maintenance. Id.

Toste Farm held only that the plaintiff had alleged sufficient facts to survive a motion to dismiss; however, this Court is convinced that, if the issue had been directly presented, the Supreme Court would have held an allegation of financial or other material assistance to be a required element of a claim for

maintenance or champerty. See id. at 906 (defendants "advised [the business partner] to pursue litigation against [the plaintiff] that they believed was meritless and that they would finance the cost") (emphasis added). The very case that more than a century ago adopted these common law doctrines in Rhode Island supports this view. Martin v. Clarke, 8 R.I. 389, 399 (1866), involved a contract in the name of the plaintiff but actually for the benefit of a third-party, "with the intent the estate agreed to be conveyed should vest in [the third-party], who had no interest in the suit aside from the contract, and to be a consideration to him for carrying on, at his own sole cost and charges, the suit then pending, to its final termination." The Supreme Court held the agreement, which bound the third-party to fund the entirety of the pending suit, to be champertous. Id. at 399, 403.

Similarly, in Kelley, the plaintiff brought suit to set aside a foreclosure sale from one Frank Whittaker to Emma Blanchard. 82 A. at 728. The plaintiff had no actual interest in the property aside from his knowledge that the notice of foreclosure was in some way legally insufficient. Id. He approached Whittaker and offered to finance the cost of invalidating the foreclosure and redeeming the property in return for a portion of the profits that might be realized from an eventual sale of the property. Id. The Rhode Island Supreme Court upheld the trial court's finding that the agreement was champertous and therefore illegal and void. Id. at

729. In so holding, the Supreme Court restated a definition of champerty that included the element of financial assistance:

> Champerty, which is a species of maintenance, has been defined to be the unlawful maintenance of a suit, in consideration of some bargain to have a part of the thing in dispute, or some profit out of it, a bargain with a plaintiff or defendant, campum partire, to divide the land or other thing sued for between them if they prevail at law; the champertor agreeing to carry on the suit at his own expense.

Id. (emphasis added and quotation omitted). By contrast, in Sparne v. Altshuler, 90 A.2d 919, 920 (R.I. 1952), the Rhode Island Supreme Court was presented with two agreements pursuant to which the defendant would provide the plaintiff with information, but no financial or material support in furtherance of litigation, regarding an estate from which the plaintiff might be owed an inheritance, in return for one-third of whatever proceeds were recovered by the plaintiff. The Supreme Court declined to find the two agreements to be champertous:

> The complainant argues that the agreements were champertous in their nature, against public policy, and therefore illegal and void. In the absence of fraud or unconscionable conduct, which we do not find to exist in the instant cause, agreements of this sort have been uniformly held to be good. . . .

Id. at 923. The Court believes that the agreement by which Defendants Venturi and Ferl would provide information to Hasbro in return for a percentage of any money recovered thereby is unlike those agreements found champertous in the foregoing decisions, and similar to the agreement found valid in Sparne. The facts alleged

by Progressive, taken as true, do not show that Defendants provided any financial or other material assistance in furtherance of Hasbro's litigation against Progressive. Indeed, Defendants had no control over Hasbro's decision to litigate or Hasbro's conduct of any litigation. They were not, therefore, as were the defendants in Toste Farm, de facto parties to the litigation. See Toste Farm, 798 A.2d at 906. On these facts, the Court must dismiss Progressive's claim for champerty.

III. Conclusion

For the foregoing reasons, Defendants' motions to dismiss or change venue is GRANTED with respect to Count I of Plaintiff's Complaint. The motions are otherwise DENIED.

IT IS SO ORDERED.

WESmith

William E. Smith
United States District Judge
Date: 6/10/08